**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BARRY MICHAELS,** | |
| Plaintiff, | |
| v. | Civil Action No. 18-cv-2906 (RDM) |
| **MATTHEW G. WHITAKER,** in his official capacity as Acting Attorney General, | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 4

I.     CONSTITUTIONAL AND STATUTORY BACKGROUND ............................................ 4

     A.     The Appointments Clause ............................................................................. 4

     B.     Federal Vacancy Statutes ............................................................................. 5

II.     FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 7

STANDARD OF REVIEW ..................................................................................................... 8

ARGUMENT ........................................................................................................................... 9

I.     PLAINTIFF LACKS STANDING TO SEEK A PRELIMINARY INJUNCTION
THAT CHALLENGES MR. WHITAKER'S DESIGNATION MERELY
BECAUSE PLAINTIFF HAS A PENDING PETITION FOR A WRIT OF
CERTIORARI ....................................................................................................... 9

II.     PLAINTIFF'S REQUEST TO ENJOIN THE CONDUCT OF LITIGATION
BEFORE THE SUPREME COURT SHOULD BE DENIED FOR EQUITABLE
REASONS. ......................................................................................................... 12

     A.     Plaintiff has not demonstrated how or why this Court should interfere with an
ongoing Supreme Court proceeding. .......................................................... 12

     B.     Plaintiff does not face irreparable harm absent a preliminary injunction. ...... 14

     C.     The public interest and balance of equities weight against a preliminary
injunction. .................................................................................................. 15

III.     PLAINTIFF IS BARRED FROM SEEKING A QUO WARRANTO ACTION. ............... 16

IV.     PLAINTIFF HAS NOT ESTABLISHED A LIKELIHOOD OF SUCCESS ON
THE MERITS.. .................................................................................................... 19

     A.     The FVRA authorizes Mr. Whitaker's designation as Acting Attorney General.
.................................................................................................................. 19

              1.     The FVRA's plain text applies to the Attorney General's vacancy. ........ 19

              2.     Section 508 operates alongside, and does not displace, the FVRA. ........ 20

                    a.     The FVRA specifies that it is nonexclusive, rather than
inapplicable, when statutes like section 508 also apply.. ................ 20

b.      Principles of statutory construction preclude Plaintiff's
interpretation of the FVRA's relationship with section 508.................26

c.      Office-specific vacancy statutes comparable to section 508
have never before been interpreted to displace the FVRA...................29

B.      The Presidential designation of Mr. Whitaker as Acting Attorney General does
not violate the Appointments Clause... ..................................................................31

1.      Several acts of Congress passed in three different centuries have
authorized the designation of acting principal officers who are not
Senate confirmed.............................................................................................31

2.      The Executive Branch has repeatedly designated acting principal
officers who are not Senate confirmed. ....................................................34

3.      Supreme Court precedent has ratified the designation of acting
principal officers who are not Senate confirmed. ...................................38

4.      Serious practical consequences and constitutional concerns militate
against Plaintiff's proposed constitutional rule.......................................42

CONCLUSION.................................................................................................................................44

**INTRODUCTION**

Matthew G. Whitaker is the Acting Attorney General of the United States. Pursuant to the President's well-settled authority under the Federal Vacancies Reform Act ("FVRA"), and consistent with precedent and history under the Appointments Clause, Mr. Whitaker was validly designated to temporarily perform the functions and duties of the Office of the Attorney General upon the resignation of Jefferson B. Sessions III.

Plaintiff, who has a pending petition for a writ of certiorari before the Supreme Court, is seeking extraordinary preliminary injunctive relief prior to the Government's response deadline to his petition. Plaintiff already attempted to interject the validity of Mr. Whitaker's designation directly into his Supreme Court case, filing a motion nearly a month ago, but thus far, the Supreme Court has declined to take the bait. Perhaps frustrated by the Supreme Court's inaction, Plaintiff is fishing for an advisory opinion in the District Court by asking this Court to take the unprecedented step of interfering with the Supreme Court's management of its own docket. Indeed, Plaintiff only asked for a substitution of Mr. Whitaker's name in the caption before the Supreme Court, whereas here, he asks the Court to enjoin the Government's litigation conduct in the Supreme Court.

But Plaintiff's claims fail for want of standing. Pursuant to longstanding statutory and regulatory designations of authority, the Senate-confirmed Solicitor General oversees the Government's litigation before the Supreme Court, and those designations apply regardless of whether there is a proper Attorney General or Acting Attorney General in place. Nor can Plaintiff manufacture an injury by speculating that Mr. Whitaker might be personally and adversely involved in the response to his pending writ of certiorari, because that is pure conjecture. Moreover, even if Mr. Whitaker were involved, that would not be the cause of any legally cognizable injury to Plaintiff. Regardless of the validity of the supervision of the Government's response brief or the substance of that brief, any relief or injury to Mr. Whitaker will flow from the Supreme Court's decision on the merits of his petition, not from the Government's response. Thus, Plaintiff's claims are likely to fail for lack of standing.

Apart from Plaintiff's failure to establish standing to challenge Mr. Whitaker's designation, the preliminary injunction being sought here should be denied on equitable grounds. First, Plaintiff's

attempt to enjoin the Government's litigation conduct before the Supreme Court is wholly improper. Specifically, his request for emergency injunctive relief seeks to inject this Court into an ongoing and unrelated Supreme Court proceeding.  By purporting to control the conduct of litigation before the Supreme Court, Plaintiff openly invites this Court to interfere, if not preempt, the Supreme Court's inherent supervisory authority over its own affairs.  Second, Plaintiff has failed to establish a cognizable injury beyond remediation.  Just as his alleged speculative injuries cannot establish an injury in fact, they cannot demonstrate irreparable harm absent injunctive relief.  Moreover, if the Supreme Court were to find that Mr. Whitaker's designation is unlawful and that the Solicitor General's response to Plaintiff's pending petition was filed without proper authority, the Supreme Court easily could decide to strike the Government's filing or order alternative relief to remedy the purported possible harm.  Third, rather than maintain the status quo, Plaintiff's proposed relief would upend it, sowing confusion and intruding into core Executive Branch operations and interfering with the Supreme Court's management of its own docket, thus harming the public interest.

Nor can Plaintiff evade these equitable limitations by invoking his alternative cause of action for a writ of quo warranto.  Plaintiff has not met the statutory hurdles to state a claim under quo warranto.  Such claims, by statutory definition, may only be brought by the Attorney General or the United States Attorney.  If the Attorney General and United States Attorney decline a petition for a writ of quo warranto, then only an "interested person," such as someone who asserts his or her own claim to the office, may petition for a writ of quo warranto.  Here, Plaintiff has no personal interest in the office.  Even if Plaintiff could overcome these two statutory barriers, Plaintiff's claim under quo warranto fails for lack of standing because claims of quo warranto are not brought as "private injuries."

In all events, Plaintiff's challenge is also likely to fail on the merits.  The designation is valid as both a statutory and constitutional matter.  *See* Mem. from Steven A. Engel, Asst. Att'y Gen., to Emmett T. Flood, Counsel to the President, *Designating an Acting Attorney General*, at 2-6 (Nov. 14, 2018) ("OLC Op.") (attached as Ex. A); *see also United States v. Peters*, No. 6:17-CR-55-REW-HAI-2, 2018 WL 6313534, at *1 (E.D. Ky. Dec. 3, 2018) (holding that the designation is authorized by the

2

FVRA and does not violate the Appointments Clause); *United States v. Valencia*, No. 5:17-CR-882, 2018 WL 6182755 (W.D. Tex. Nov. 27, 2018) (same).

The FVRA authorizes the President to designate acting officials to perform the duties of most Senate-confirmed executive offices during vacancies, and it is generally the "exclusive" means of selecting an acting officer. *See* 5 U.S.C. §§ 3345, 3347. The FVRA does not apply to certain offices as expressly articulated in the statue itself, and the office of Attorney General is not one of them. *See id.* § 3349c. To be sure, there is another vacancy statute specific to the Attorney General that separately provides a line of succession, starting with the Deputy Attorney General, who "may" serve as Acting Attorney General in the event of a vacancy. *See* 28 U.S.C. § 508. But in subsequently enacting the FVRA, Congress made clear that agency-specific vacancy statutes like section 508 do not render the FVRA inapplicable, but rather merely render the FVRA non-exclusive, making both options available. *See* 5 U.S.C. § 3347(a)(1). Indeed, in enacting the FVRA, Congress expressly eliminated a provision that had rendered the FVRA's predecessor statute inapplicable to the Attorney General, *compare* 5 U.S.C. § 3347 (1994), *with* 5 U.S.C. §§ 3345, 3347, 3349c, and it retained a provision in 28 U.S.C. § 508(a) specifying that the Deputy Attorney General is the first assistant for purposes of 5 U.S.C. § 3345, which contains the FVRA's designation methods.

Moreover, even if the plain language, structure, and statutory history of the FVRA were not enough to dictate that the FVRA and section 508 operate as alternative designation methods, the result is further confirmed by legislative history, statutory construction canons, executive practice, and judicial precedent. Every relevant interpretive principle compels the conclusion that the President may designate an Acting Attorney General under the FVRA.

Similarly, the constitutional validity of Mr. Whitaker's designation is well-established by both practice and precedent from all three branches of government. Congressional statutes enacted over three different centuries, countless examples of similar presidential designations, and Supreme Court precedent all confirm that the Constitution does not require an acting official who is temporarily authorized to carry out the duties of a principal officer to be confirmed by the Senate. A contrary holding would not only fly in the face of this longstanding practice and precedent, but also raise serious

3

concerns related to the proper functioning of the Executive Branch. Plaintiff's emergency motion should be denied.[1]

## BACKGROUND

## I.   CONSTITUTIONAL AND STATUTORY BACKGROUND

### A. The Appointments Clause

The Appointments Clause of Article II of the U.S. Constitution prescribes the method of appointment for all "officers of the United States" whose appointments are not otherwise provided for in the Constitution. U.S. Const. art. II, § 2, cl. 2; *see Buckley v. Valeo*, 424 U.S. 1, 125-26, 132 (1976) (per curiam). "Officers" are those persons who hold a "continuing and permanent" federal position and exercise "significant authority pursuant to the laws of the United States." *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018). Pursuant to the Clause, the President, with the advice and consent of the Senate, nominates principal officers, such as the Attorney General. Congress may vest the power to select "inferior Officers," however, "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Neither the Appointments Clause nor any other provision of the Constitution expressly addresses whether and in what circumstances an individual may serve in an acting capacity for a principal officer.

---

[1] At 12:52 p.m. today—approximately four hours before Defendant's deadline to file this brief and well after the Court's scheduling order was issued—Plaintiff filed an Amended Complaint. Am. Compl., ECF No. 14. Contrary to Plaintiff's prior representation that "[t]he substance of [his] claims w[ould] remain unchanged" in the Amended Complaint, *see* Pl.'s Scheduling Reply at 4 n.*, ECF No. 9, the Amended Complaint substantially differs from its predecessor. For example, the new pleading asserts a new cause of action, *see* Am. Compl. ¶¶ 27-29, and adds allegations and substantive arguments in support of its existing causes of action, *compare* Am. Compl. ¶ 22 (alleging that Mr. Whitaker has consulted with the Solicitor General regarding Plaintiff's petition for certiorari), *with* Compl. ¶ 15, ECF No. 1 (corresponding paragraph containing no such allegation); Am. Compl. ¶ 32 (arguing that DOJ's position is a "constructive denial" of plaintiff's request for a writ of quo warranto), *with* Compl. ¶ 23 (corresponding paragraph containing no such argument). In light of the prejudice to Defendant from these substantial alterations submitted four hours before its filing deadline, Defendant's brief addresses only the Original Complaint. Likewise, this Court should ignore Plaintiff's Amended Complaint for the purposes of the preliminary injunction motion and deem the Original Complaint as the operative pleading for this motion.

**B. Federal Vacancy Statutes**

In the face of the Constitution's lack of express instruction on the question, Congress has provided, since almost the Founding of this Nation, for the designation of individuals, including those not Senate-confirmed, to serve temporarily as acting principal officers. In 1792, Congress authorized "any person or persons" to fill certain vacancies in the Departments of State, Treasury, and War, including vacancies in the position of Secretary, until the permanent officer could resume his duties or a successor was appointed. Act of May 8, 1792, ch. 37, § 8, 1 Stat. 279, 281. In 1863, Congress extended the 1792 Act to all vacancies in the office of "the head of any Executive Department of the Government, or of any officer of either of the said Departments whose appointment is not in the head thereof." Act of Feb. 20, 1863, ch. 45, § 1, 12 Stat. 656, 656.

Shortly thereafter, Congress enacted the Vacancies Act of 1868, which provided as a default rule that in the case of a vacancy "of the head of any executive department of the government, the first or sole assistant thereof shall . . . perform the duties of such head." Act of July 23, 1868, ch. 227, § 1, 15 Stat. 168. The Vacancies Act further authorized the President to bypass the "first assistant" default rule and designate a Senate-confirmed official to fill the vacancy. *See id.* Between 1868 and 1988, Congress amended the Vacancies Act to extend the time limits for permissible acting service and include the vast majority of executive offices within its scope of coverage. *See, e.g.,* Pub. L. No. 100-398, § 7(b), 102 Stat. 985, 988 (1988).

In addition to the Vacancies Act, Congress also enacted myriad agency-specific vacancy statutes. Of particular relevance here, 28 U.S.C. § 508(a) provides that in the case of a vacancy in the office of Attorney General, "the Deputy Attorney General may exercise all the duties of that office, and for the purpose of section 3345 of title 5 [then the Vacancies Act and now the FVRA] the Deputy Attorney General is the first assistant to the Attorney General." 28 U.S.C. § 508(a). If the offices of Attorney General and Deputy Attorney General are both vacant, "the Associate Attorney General shall act as Attorney General," and "[t]he Attorney General may designate the Solicitor General and the Assistant Attorneys General, in further order of succession, to act as Attorney General." 28 U.S.C. § 508(b). Notably, the President's authority in the Vacancies Act to bypass the statute's default rule

was expressly made inapplicable "to a vacancy in the office of Attorney General." 5 U.S.C. § 3347 (1994); *see* Rev. Stat. 179 (1st ed. 1875) (harmonizing the Department of Justice's organic statute enacted in 1870 with the Vacancies Act of 1868); Rev. Stat. § 179 (2d ed. 1878) (same).

In 1998, Congress enacted the FVRA, 5 U.S.C. §§ 3345–3349d to replace the Vacancies Act and provide comprehensive procedures for the President to designate an acting official to perform the duties of an executive officer whose appointment is subject to Senate confirmation whenever the incumbent "dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a). The FVRA provides three options. First, absent any other presidential designation, the "first assistant" to the vacant office shall perform its functions and duties. *Id.* § 3345(a)(1). Second, the President may depart from that default course by directing another Senate-confirmed presidential appointee to perform the vacant office's functions and duties. *Id.* § 3345(a)(2). And third, the President may designate an officer or employee within the same agency to perform the vacant office's functions and duties, provided that he or she has been in the agency for at least 90 days in the 365 days preceding the vacancy, in a position for which the rate of pay is equal to or greater than the minimum rate for GS-15 of the General Schedule. *Id.* § 3345(a)(3). This third option is available even where the vacant office is the agency head. *Cf. id.* § 3348(b)(2) (special rule applicable for vacancies other than the agency head). An acting official designated under the FVRA can generally serve no longer than 210 days, subject to certain extensions depending on the Senate calendar and the status of nominations to fill the position. *See id.* § 3346.

The FVRA also contains a short list of specific offices to which it does not apply. *Id.* § 3349c. The office of Attorney General is not one of those offices. Indeed, in enacting the FVRA, Congress eliminated the previous exception that existed for the office of Attorney General in the Vacancies Act, *see id.*, but retained section 508's preexisting "first assistant" designation for purposes of section 3345, *see* 28 U.S.C. § 508(a). Finally, the FVRA is by default the "exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office [requiring Senate confirmation] of an Executive agency." 5 U.S.C. § 3347(a). The FVRA is not exclusive, however, where there is a relevant office-specific vacancy statute, such as section 508. *Id.* § 3347(a)(1).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In 2016, Plaintiff filed a putative class action in the District of Nevada against then-Attorney General Loretta E. Lynch, in her official capacity as Attorney General, and the ATF Deputy Director. *See Michaels v. Lynch*, No. 2:16-cv-00578,  2017 WL 388807, at *1 (D. Nev. Jan. 26, 2017), *aff'd sub nom. Michaels v. Sessions*, 700 F. App'x 757 (9th Cir. 2017).  The gravamen of Plaintiff's complaint was that the federal prohibition on firearm possession by convicted felons, 18 U.S.C. § 922(g)(1), is unconstitutional as applied to certain individuals convicted of non-violent felonies.  *Id.*  The district court dismissed the complaint and denied leave to amend.  *Id.* at *3.

The Ninth Circuit affirmed the dismissal in an unpublished decision.  *Michaels v. Sessions*, 700 F. App'x 757, 758 (9th Cir. 2017).  In its opinion, the court noted that Attorney General Lynch had been succeeded in office by Attorney General Jefferson B. Sessions, III and that the latter had therefore been "substituted for his predecessor" as a party to the appeal under Federal Rule of Appellate Procedure 43(c)(2).  *Id.* at 758 n.*.  On June 27, 2018, Plaintiff filed a petition for a writ of certiorari to the Supreme Court.  Plaintiff named then-Attorney General Sessions and the ATF Deputy Director as respondents.

On November 7, 2018, Attorney General Sessions resigned from office.  Pursuant to section 3345(a)(3) of the FVRA, the President designated Matthew G. Whitaker, Chief of Staff and Senior Counselor to the Attorney General, to act temporarily as Attorney General.  That same day, the Government moved for an extension of time to respond to Plaintiff's petition for writ of certiorari. *See* Mot. to Extend Time, *Michaels v. Whitaker*, No. 18-496 (U.S. Nov. 7, 2018).  On November 9, the Supreme Court granted the motion, setting December 17, 2018 as the Government's deadline to respond to Plaintiff's petition.

On November 16, 2018, Plaintiff moved in the Supreme Court to substitute Rod J. Rosenstein, the Deputy Attorney General, as a party to the proceedings in lieu of Acting Attorney General Whitaker.  *See* Pet'rs. Mot. To Substitute, *Michales v. Whitaker*, No. 18-496 (U.S. Nov. 16, 2018). Plaintiff argued that Deputy Attorney General Rosenstein is the Acting Attorney General by operation of 28 U.S.C. § 508(a) and that Mr. Whitaker's designation as Acting Attorney General is unlawful on

statutory and constitutional grounds.  To date, the Supreme Court has not yet ruled on Plaintiff's motion to substitute.  Notably, Plaintiff did *not* ask the Supreme Court to enjoin Mr. Whitaker from exercising his supervisory authority as Acting Attorney General over the Government's response to his certiorari petition.  Rather, the only relief he sought there was substitution of the allegedly proper respondent in the caption.

On December 11, 2018—over a month after the Supreme Court set the Government's deadline for responding to Plaintiff's petition for certiorari and over two weeks after Plaintiff filed his motion to substitute—Plaintiff filed this emergency motion, seeking to preliminarily enjoin Mr. Whitaker from exercising his supervisory authority as Acting Attorney General over the Government's response to Plaintiff's petition for certiorari.  *See* Pl.'s Mot. For Prelim. Inj., ECF No. 2 ("Mot.").

## **STANDARD OF REVIEW**

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis added); *see Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).  An interim injunction is "never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and "a plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in in the public interest." *Id.* at 20, 24.  A plaintiff cannot prevail without some showing on each of those factors.  *See id.* at 23-24, 31-32 (holding that "proper consideration of" balance of equities and public interest "alone requires denial of the requested injunctive relief" and thus finding no need to address likelihood of success).[2]

---

[2] The D.C. Circuit "has, in the past, followed a "sliding scale" approach to evaluating preliminary injunctions . . . . The continued viability of the sliding scale approach is highly questionable, however, in light of the Supreme Court's holding in *Winter* . . . ."  *Singh v. Carter*, 185 F. Supp. 3d 11, 16 (D.D.C. 2016) (citing *In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir. 2013) for the proposition that all four prongs of the preliminary injunction standard must be met before injunctive relief can be granted).  Regardless of which approach is followed, preliminary injunctive relief is inappropriate here.

## ARGUMENT

The Court should deny Plaintiff's motion for preliminary injunction on both threshold and substantive grounds. Plaintiff's challenge to Mr. Whitaker's designation fails for lack of standing, does not warrant the extraordinary equitable relief he seeks, and is meritless in any event.

## I.    PLAINTIFF LACKS STANDING TO SEEK A PRELIMINARY INJUNCTION THAT CHALLENGES MR. WHITAKER'S DESIGNATION MERELY BECAUSE PLAINTIFF HAS A PENDING PETITION FOR A WRIT OF CERTIORARI.

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (citation omitted). A core element of Article III's case-or-controversy requirement is that a plaintiff must establish his or her standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The "standing inquiry [is] especially rigorous when reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

The "irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. "To demonstrate standing, a plaintiff must show that she has suffered an injury in fact that is fairly traceable to the defendant's actions and that is likely to be redressed by the relief []he seeks." *Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017), cert. denied, 138 S. Ct. 981 (2018) (internal quotation marks omitted); *see Lujan,* 504 U.S. at 560-61. Injury in fact is "the '[f]irst and foremost' of standing's three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)), *as revised* (May 24, 2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). Adherence to these standing requirements "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the

consequences of judicial action[,]" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982), and "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

Any alleged harm to Plaintiff with respect to the Department's response to his petition for writ of certiorari does not give rise to Article III standing because the alleged harm is entirely speculative and not caused by the invasion of any legally protected interest. Plaintiff's purported injury is that because Mr. Whitaker was "appointed" in violation of section 508 and the Appointments Clause of the Constitution, Plaintiff is entitled to a valid determination from a proper Acting Attorney General on whether the Department will defend the constitutionality of 18 U.S.C. § 922(g). Mot. ¶ 3. This alleged harm, which identifies no invasion of any legally protected interest and is inherently speculative, does not establish standing.

First, Plaintiff's argument that the mere existence of an allegedly unconstitutional Acting Attorney General establishes a cognizable injury fails on its face. Plaintiff principally relies on the D.C. Circuit's decision in *Landry v. FDIC*, 204 F.3d 1125, 1131 (D.C. Cir. 2000), to support its assertion of standing. But Plaintiff's reliance is misplaced. In *Landry*, the court held that a plaintiff raising an Appointments Clause challenge to the administrative law judge who presided over his hearing was not required to show that the allegedly improper appointment of the judge directly caused him prejudice. 204 F.3d at 1131. *Landry* concerned a plaintiff who "had, in fact, been subject to an action by the official whose appointment [it] challenged as constitutionally invalid." *Jefferson v. Harris*, 285 F. Supp. 3d 173, 187 (D.D.C. 2018). Here, by contrast, the Solicitor General, under longstanding designations, is authorized by statute and regulation to conduct litigation in the Supreme Court, without any need for Attorney General authorization or participation. *See* 28 U.S.C. § 518(a) (authorizing Solicitor General to "conduct and argue suits and appeals in the Supreme Court"); 28 C.F.R. § 0.20(a) (assigning Solicitor General responsibility for "[c]onducting . . . all Supreme Court cases"). Indeed, even if Mr. Whitaker's designation were invalid, it would have no effect on the Department's litigating authority in the Supreme Court. Although most functions of the Department, including its litigation functions, are vested in the first instance in the Attorney General, *see* 28 U.S.C. § 509, the Attorney General need

not, and in most cases does not, exercise those functions personally. The authority to conduct litigation "in which the United States, an agency, or officer thereof is a party," 28 U.S.C. § 516, has been conferred by statute and regulation on other officers of the Department. Here, the Solicitor General is responsible for handling Supreme Court litigation on behalf of the Department.[3]

Second, Plaintiff offers nothing except pure conjecture that Mr. Whitaker is "personally" supervising the Government's response to his writ of certiorari that purportedly causes the harm to Plaintiff. Mot. ¶¶ 3-4. But Plaintiff's allegation is based on nothing more than rank speculation, which is wholly inadequate to establish standing. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that litigant's "well-pleaded factual allegations" must "plausibly give rise to an entitlement to relief" to survive dismissal). That speculation is particularly glaring here, given that the Solicitor General's office already has opposed several similar petitions for certiorari involving as-applied challenges to 18 U.S.C. § 922(g). *See, e.g.*, Aug. 14, 2017 Br. for United States in Opp'n, *Phillips v. United States*, 138 S. Ct. 56 (2017) (No. 16-7541); Oct. 30, 2017 Br. for United States in Opp'n, *Rogers v. United States*, 138 S. Ct. 502 (2017) (No. 17-69); Jan. 16, 2018 Br. for United States in Opp'n, *Hughley v. United States*, 138 S. Ct. 983 (2018) (No. 17-6808). That fact belies Plaintiff's speculation that Mr. Whitaker must be personally involved in supervising the response to his petition, or that whether the Acting Attorney General is Mr. Whitaker or Mr. Rosenstein will have any effect on the substance of the government's response to Plaintiff's certiorari petition. And even supervising a response to a writ of certiorari would not implicate the substantive rights of a plaintiff like an administrative proceeding might. Unlike the ALJ in *Landry*, Plaintiff cannot show that Mr. Whitaker has taken any action directly applicable to Plaintiff.

In all events, the Attorney General's authority to supervise a response to Plaintiff's petition, *see* Mot. ¶ 3, does not give rise to an Article III injury here because Plaintiff has no legally cognizable

---

[3] Other Department officials have similar authority for the conduct of litigation in the lower courts. *See, e.g.*, 28 U.S.C. § 547(1) and (2) (authorizing United States Attorneys to "prosecute for all offenses against the United States" and to "prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned"); 28 C.F.R. § 0.13(a) (authorizing "[e]ach Assistant Attorney General and Deputy Assistant Attorney General . . . to exercise the authority of the Attorney General under 28 U.S.C. 515(a), in cases assigned to, conducted, handled, or supervised by such official").

interest in who supervises the response.  Plaintiff's substantive right to seek review before the Supreme Court is not dependent on the identity or validity of the Acting Attorney General.  Likewise, though the Attorney General has the legal authority to withdraw the defense of a federal statute on the ground that it is unconstitutional, *see* 28 U.S.C. § 530D, Plaintiff has no legal entitlement to demand the Attorney General to make a 530D determination in response to his writ of certiorari.  The Department has complete discretion to formulate its own views on the constitutionality of any federal law.  *See generally Massachusetts v. Mellon*, 262 U.S. at 447, 484–85 (1923) (Courts should not "adjudicate . . . abstract questions of political power, of sovereignty, of government.").

Equally importantly, the Department's mere litigation position regarding Plaintiff's petition for certiorari cannot *itself be the cause* of any alleged injury to Plaintiff, because any such injury would flow instead from the independent decision of the Supreme Court whether to grant Plaintiff's petition or not.  Any possible entitlement to relief thus turns on whether the Supreme Court agrees with Plaintiff, not on what the Department says in response to Plaintiff's petition.  Accordingly, Plaintiff cannot show that any hypothetical effect that Mr. Whitaker might have on the Department's litigation position before the Supreme Court would cause Plaintiff a cognizable injury.  Because Plaintiff provides no concrete, non-speculative allegations of actual or imminent harm to any legally protected interest, the Court should deny his motion for a preliminary injunction for lack of standing.

## II.   PLAINTIFF'S REQUEST TO ENJOIN THE CONDUCT OF LITIGATION BEFORE THE SUPREME COURT SHOULD BE DENIED FOR EQUITABLE REASONS.

### A.  Plaintiff has not demonstrated how or why this Court should interfere with an ongoing Supreme Court proceeding.

Plaintiff already has raised his statutory and constitutional challenge to Mr. Whitaker's designation before the Supreme Court.  But because the Supreme Court has not ruled fast enough for Plaintiff, evidently, he asks this Court to intervene and directly interfere with the conduct of ongoing proceedings there.  The Court should reject this inexplicable and improper request.

On November 16, 2018, Plaintiff filed his motion asking the Supreme Court to substitute Rod J. Rosenstein, the Deputy Attorney General, as a respondent in lieu of Mr. Whitaker.  *See* Pet'rs. Mot.

to Substitute, *Michaels v. Whitaker*, No. 18-496 (U.S. Nov. 16, 2018).  As here, Plaintiff argued in that motion that Mr. Whitaker's designation is unlawful on both statutory and constitutional grounds.  Though Plaintiff also asked the Supreme Court to order additional briefing on the lawfulness of Mr. Whitaker's designation, *see id.* at 3 n.1, it so far has declined to do so.

That motion remains pending before the Supreme Court.  Nevertheless, Plaintiff now asks this Court to insert itself into that action and enjoin the Department of Justice from engaging in particular litigation conduct in an entirely separate, ongoing proceeding before the Supreme Court.  That request is both improper and unnecessary.  The Supreme Court is, of course, fully capable of supervising the litigation conduct of the parties appearing before it, and Plaintiff has had more than a month to ask it to grant such relief.  Yet it is this Court that Plaintiff now asks to regulate the Department of Justice's conduct in connection with the Department's December 17 Supreme Court filing.  To be sure, Plaintiff now insinuates that he could not obtain such relief from the Supreme Court.  Pl.'s Scheduling Reply at 2-3.  Although Plaintiff is not entitled to such extraordinary relief in any court, the Supreme Court has at least as much authority—and indeed, far more authority—than this Court to manage ongoing litigation before it, given its inherent and statutory authority to supervise the conduct of parties in its own proceedings.  *See* 28 U.S.C. § 1651 ("The Supreme Court . . . may issue all writs necessary or appropriate in aid of [its] respective jurisdiction[] and agreeable to the usages and principles of law."); *see also In re Marin*, 956 F.2d 339, 340 (D.C. Cir. 1992) (recognizing Supreme Court's "exclusive" and "inherent supervisory authority" to manage its own affairs).[4]

Moreover, Plaintiff cites nothing for the extraordinary proposition that this Court could interfere with, if not preempt, the Supreme Court's authority to manage its own proceedings—let alone that it should.  And, make no mistake, that is precisely what Plaintiff is asking this Court to do.  He admits as much, declaring that he filed this action simply because, in his eyes, the Supreme Court

---

[4] Plaintiff also suggests that "*only* this Court has jurisdiction to issue the writ of warranto."  Pl.'s Scheduling Reply at 3.  But as explained, *infra*, this Court does not and, in any event, the writ is unrelated to Plaintiff's emergency motion for injunctive relief in connection with the Government's December 17 filing before the Supreme Court.

has not acted fast enough on his motion to substitute. *See* Pl.'s Scheduling Reply at 3. That is thin gruel to interfere with the Supreme Court's management of its own docket.

Finally, Plaintiff complains that the Government has argued in the past that the "lawfulness of Mr. Whitaker's appointment should be litigated in the lower courts in the first instance." Pl.'s Scheduling Reply at 2. He suggests that this position is somehow inconsistent with any argument that this Court should not interfere with ongoing proceedings in the Supreme Court. Hardly so. The Government has argued to the Supreme Court that it should await a true case or controversy in the lower courts before addressing in the first instance a contrived challenge under a procedural rule governing captions. That argument is not an invitation to Plaintiff to launder that same contrived challenge through a district court. Indeed, under Plaintiff's theory, any party across the United States could file an action in a district court challenging the legality of Mr. Whitaker's designation and could move for emergency injunctive relief to preclude the Government from filing memoranda (or even acting) in unrelated actions before the Supreme Court, courts of appeals, other district courts, and even state courts. Plaintiff's motion for emergency relief is improper and should be rejected on this basis alone.

## B. Plaintiff does not face irreparable harm absent a preliminary injunction.

In order to obtain a preliminary injunction, Plaintiff must show that he faces "irreparable harm" absent a preliminary injunction, *Winter*, 555 U.S. at 20, an element that always has been considered to be "the basis of injunctive relief in the federal courts." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). There is "a high standard" for a showing of irreparable harm: "the injury must be both certain and great" and "must be actual and not theoretical." *England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *see Doe v. Mattis*, 889 F.3d 745, 782 (D.C. Cir. 2018); *League of Women Voters of United States v. Newby*, 838 F.3d 1, 7-8 (D.C. Cir. 2016). The irreparable harm standard "erects a very high bar for a movant," *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012), with a threshold well above the injury required for Article III standing. *See, e.g., Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1508, *amended*, 66 F.3d 1226 (D.C. Cir. 1995).

For the same reasons, Plaintiff cannot establish injury in fact sufficient to confer Article III standing, he cannot establish irreparable harm.  The harm Plaintiff has alleged concerning the Department's litigation conduct in a Supreme Court is both speculative and legally baseless. Moreover, were the alleged harm come to fruition, the Supreme Court could address it at a later time. For instance, if the Supreme Court were to find that Mr. Whitaker's designation is unlawful, that the Solicitor General's response to Plaintiff's petition for writ of certiorari was filed without proper authority, and that this somehow injured Plaintiff, the Supreme Court could simply strike the Government's response and order the Government to file a new brief.  Thus, this is not a case where the alleged harm is "beyond remediation." *Newby*, 838 F.3d at 7-8.

Finally, Plaintiff's delay in seeking emergency preliminary relief weighs heavily against a finding of irreparable harm.  *See, e.g., Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of U.S.*, 840 F. Supp. 2d 327, 338 (D.D.C. 2012) ("Plaintiffs' delay in seeking relief . . . weighs against a finding of irreparable harm); *Newdow v. Bush*, 355 F.Supp.2d 265, 292 (D.D.C. 2005) ("unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm").  Plaintiff first challenged Mr. Whitaker's designation in the Supreme Court on November 16, 2018.  *See* Pet'rs. Mot. To Substitute, *Michaels v. Whitaker*, No. 18-496 (U.S. Nov. 16, 2018).  And, despite knowing of the Government's impending December 17 deadline for over a month, Plaintiff never asked the Supreme Court for the relief sought here and instead waited until the last minute to seek emergency injunctive relief on an accelerated briefing schedule.  Because Plaintiff has failed to make the showing required by the high bar of irreparable harm, so his motion for a preliminary injunction should be denied.

### C.  The public interest and balance of equities weight against a preliminary injunction.

Likewise, Plaintiff fails to show that any alleged harm outweighs the harm a preliminary injunction would cause the Government, or that "an injunction is in the public interest." *Winter*, 555 U.S. at 20.  These factors merge where, as here, the Government is the opposing party.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  In analyzing the factors, courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-*

*Barcelo*, 456 U.S. 305, 312-13 (1982).  And where Congress has legislated based on its considered view of the public interest, a court's "consideration of the public interest is constrained . . . for the responsible public officials . . . have already considered that interest."  *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1126-27 (9th Cir. 2008); *see also Serono Labs. Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998) (the public interest is "inextricably linked" to the congressional purpose). Here, the equities and public interest weigh heavily against the extraordinary relief of interfering with an ongoing Supreme Court proceeding and of setting aside the President's designation of an Acting Attorney General, which was undertaken pursuant to a statutory scheme established by Congress and consistent with the longstanding practice and precedent of all three branches of government.

## III.    PLAINTIFF IS BARRED FROM SEEKING A QUO WARRANTO ACTION.

In his Complaint, Plaintiff asserts an alternative claim for a writ of quo warranto.  On this emergency motion, however, Plaintiff fails to even mention the writ, let alone demonstrate any likelihood of success on the merits of such a claim.  Accordingly, for the purposes of this Motion, Plaintiff has effectively conceded that he cannot show a likelihood of success on this claim.  Even if Plaintiff had not done so, he has no entitlement to this "extremely difficult and uncertain remedy." *Andrade v. Lauer*, 729 F.2d 1475, 1498 (D.C. Cir. 1984), *as amended* Apr. 16, 1984.

The federal quo warranto statute, which Congress codified for historical reasons in the D.C. Code, provides a civil action against any person who, within the District of Columbia, "usurps, intrudes into, or unlawfully holds or exercises . . . a public office of the United States, civil or military." D.C. Code § 16-3501.  The D.C. Circuit has held that the quo warranto statute is the sole means for launching a direct attack on the authority of a person to perform the duties of a public office, as opposed to a collateral attack that challenges government actions on the basis that the official who took the actions was improperly in office.  *See Sw. Gen., Inc. v. NLRB*, 796 F.3d 67, 81 (D.C. Cir. 2015) ("The de facto officer doctrine allows [direct] attacks [on an officer's authority,] but they can be brought via writ of quo warranto only."), *aff'd*, 137 S. Ct. 929 (2017).

However, the writ is unavailable to Plaintiff because he cannot satisfy the statutory requirements for its issuance. To obtain a writ of quo warranto against any person, a "plaintiff must first apply to the Attorney General or the United States Attorney to bring the action on his behalf in the District Court for the District of Columbia." *Andrade*, 729 F.2d at 1498 (citing D.C. Code §§ 16-3501-02); *see also Sw. Gen.*, 796 F.3d at 81. Plaintiff has not done so, and that alone bars his claim. *Cf. Sibley v. Obama*, 866 F. Supp. 2d 17, 20 (D.D.C. 2012) (finding that plaintiff was not entitled to institute quo warranto proceeding where he had not received an answer to his request to Attorney General and United States Attorney), *aff'd*, No. 12-5198, 2012 WL 6603088 (D.C. Cir. Dec. 12, 2012). Plaintiff argues that he should be excused from this requirement because such a request would purportedly be futile given that he is challenging Mr. Whitaker's designation as Acting Attorney General. *See* Compl. ¶ 23. But Plaintiff is free to ask the United States Attorney to commence an action. And, in any event, this Court may not casually ignore the statutory requirements of the action as enacted by Congress or binding D.C. Circuit precedent. The failure to satisfy this statutory condition bars Plaintiff's quo warranto claim. *See, e.g.*, *Sibley*, 866 F. Supp. at 20.

The quo warranto statute erects a second hurdle that Plaintiff cannot surmount. If the Attorney General and the United States Attorney decline to institute a quo warranto action, only an "interested person" may petition a court for leave to have the writ issued. D.C. Code § 16-3503; *Sw. Gen.*, 796 F.3d at 81. But Plaintiff is not an "interested person" for purposes of the statute because he "asserts no personal interest in the office." *In re James*, 241 F. Supp. 858, 859 (S.D.N.Y. 1965); *see also Andrade*, 729 F.2d at 1499 (noting writ's origin as "an action of ejectment, in which the only party that could bring a lawsuit was a claimant who sued to regain possession from one who was unlawfully in possession").

Further, even if Plaintiff could overcome these statutory barriers to his claim, he would still fail to state a claim under the quo warranto statute. The D.C. Circuit has held that "a quo warranto action against a public official may be brought *only* by the Attorney General or the U.S. Attorney." *Taitz v. Obama*, 707 F. Supp. 2d 1 (D.D.C. 2010) (citing *Andrade*, 729 F.2d at 1498); *see also United States v. Carmody*, 148 F.2d 684, 685 (D.C. Cir. 1945) ("'[T]he usurpation of a public office . . . [is] not, at

common law, [a] private injury[y], and the remedy by quo warranto must be on the suggestion of the attorney general . . . ."); *Sibley*, 866 F. Supp. 2d at 20-21 ("[T]he scope of D.C. Code § 16-3503 has been interpreted narrowly by the D.C. Circuit, which has concluded that only the Attorney General or the United States Attorney has standing to bring a quo warranto action challenging a public official's right to hold office."), *aff'd* 2012 WL 6603088, at *1 ("[T]he district court was correct that, under this court's precedent, actions against public officials (as opposed to actions brought against officers of private corporations) can *only* be instituted by the Attorney General.") (citation omitted)).  This limitation stems from the fact that "challenges to authority by which a public office is held 'involve a right belonging to the whole body of the public which can be protected only by a public representative.'" *Taitz*, 707 F. Supp. 2d at 3 (quoting *Carmody*, 148 F.2d at 685).  Likewise, absent any personal claim to the office of Attorney General, Plaintiff cannot assert an injury sufficiently particularized to him.  *See Sibley*, 866 F. Supp. 2d at 20 ("A public official's title to office is an injury particularized to an individual only if that individual has 'an interest in the office itself'—if he or she sought the office at the same time as the current officeholder." (quoting *Newman v. United States ex rel. Frizzell*, 238 U.S. 537, 550 (1915)).  Thus, because Plaintiff is not a party with a personal interest in the office and "is neither the Attorney General of the United States nor the United States Attorney for the District of Columbia," he "does not have standing to bring a quo warranto action challenging a public official's right to hold office." *Taitz*, 707 F. Supp. 2d at 3 & n.1.[5]

---

[5] That Plaintiff cannot assert a quo warranto action, of course, does not mean that Mr. Whitaker's designation is insulated from judicial review.  A plaintiff could challenge his designation in a lawsuit challenging an action taken by Mr. Whitaker in his official capacity—and in which the plaintiff satisfied the usual requirements of standing, ripeness, final agency action, and the like.  *See, e.g.*, *SW Gen.*, 796 F.3d at 81-83 (allowing party to challenge adverse final agency action based on FVRA violation); *Andrade*, 729 F.2d at 1499-1500 (allowing plaintiffs to challenge a specific action "as it affect them—not wholesale invalidation of actions taken by" officials whose status plaintiffs contested).  But here, the quo warranto statute and Article III preclude Plaintiff's attempted direct attack on Mr. Whitaker's designation.

## IV.   PLAINTIFF HAS NOT ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS.

Plaintiff's arguments also fail on the merits.  The President lawfully exercised his authority under the FVRA and Article II of the Constitution to designate Mr. Whitaker to serve temporarily as Acting Attorney General upon the resignation of former Attorney General Sessions.  That conclusion is compelled by the plain text and structure of the FVRA's applicability and exclusivity provisions, 5 U.S.C. §§ 3347, 3349c.  It is also confirmed by every relevant canon of statutory construction and the long and unbroken history of applying the FVRA to the many other agency-specific statutes that, like section 508, authorize a deputy to act in a vacant office.  Further, the designation does not violate the Appointments Clause because longstanding practice and precedent from all three branches of government confirm that temporary service as Acting Attorney General is not a principal office requiring Senate confirmation.  The only courts to have considered these questions concluded that Mr. Whitaker's designation is valid.  *See United States v. Peters*, 6:17-CR-55-REW-HAI-2, 2018 WL 6313534, at *1 (E.D. Ky. Dec. 3, 2018); *United States v. Valencia*, No. 5:17-CR-882, 2018 WL 6182755 (W.D. Tex. Nov. 27, 2018).

### A.  The FVRA authorizes Mr. Whitaker's designation as Acting Attorney General.

#### 1.  The FVRA's plain text applies to the Attorney General's vacancy.

The FVRA on its face applies to vacancies in the office of Attorney General.  It expressly authorizes the President to fill a vacancy arising by "resignation" in a covered Senate-confirmed position by designating, among other individuals, "an officer or employee" within the same agency "to perform the functions and duties of the vacant office," provided that he or she has been in the agency for at least 90 days in the 365-day period preceding the resignation, in a position for which the rate of pay is equal to or greater than the minimum rate for GS-15 of the General Schedule.  5 U.S.C. § 3345(a)(3).  The Senate-confirmed positions covered by the FVRA generally include those positions at all "Executive agenc[ies]."  *Id.* § 3345(a); *see id.* § 105 (defining "Executive agency").  And the FVRA expressly contemplates that the vacant office may be the agency head.  *Cf. id.* § 3348(b)(2) (special rule applicable for vacancies other than the agency head).

Moreover, where Congress intended to exclude an office from the FVRA's scope, it said so expressly, delineating a short list of particular offices in particular agencies to which the FVRA "shall not apply." *Id.* § 3349c. The Attorney General is not among those few offices, and the President may thus rely on the FVRA to fill an Attorney General vacancy. Indeed, the FVRA eliminated altogether the Vacancies Act's exclusion of the office of Attorney General, while retaining section 508's specification that the Deputy Attorney General is the "first assistant" under section 3345, the operative FVRA section here. And under the FVRA's plain terms, Mr. Whitaker's designation falls squarely within 5 U.S.C. § 3345(a)(3), as he satisfies all of the eligibility criteria.

### 2. Section 508 operates alongside, and does not displace, the FVRA.

Plaintiff contends that Congress made the FVRA inapplicable to the office of the Attorney General by virtue of 28 U.S.C. § 508. That statute provides that when there is "a vacancy in the office of Attorney General . . . the Deputy Attorney General *may* exercise all the duties of that office." 28 U.S.C. § 508(a) (emphasis added). According to Plaintiff, this provision, which long predates the FVRA, deprives the President of his FVRA authority to select someone other than the Deputy Attorney General to serve as Acting Attorney General. Plaintiff's position is contrary to the FVRA's plain text and well-settled principles of statutory interpretation.

### a. The FVRA specifies that it is nonexclusive, rather than inapplicable, when statutes like section 508 also apply.

**i.** In enacting the FVRA, Congress recognized the existence of office-specific vacancy statutes, and prescribed how these statutes intersect with the FVRA. By default, the FVRA is the "*exclusive* means for temporarily authorizing an acting official to perform the functions and duties of any office [requiring Senate confirmation] of an Executive agency." 5 U.S.C. § 3347(a) (emphasis added). But where "a statutory provision expressly . . . designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity," such as section 508, Congress provided that the FVRA is not "exclusive." *Id.* § 3347(a)(1)(B). In other words, section 3347 makes an exception for, and leaves in effect, office-specific statutes such as section 508, which

are then treated as exceptions from the FVRA's generally exclusive applicability, and not as provisions that supersede or displace the FVRA in whole or in part.

The structure of the statute further corroborates Defendant's interpretation of the statutory text. Section 3347's proviso that the FVRA is not the "exclusive" means of addressing vacancies stands in marked contrast with section 3349c, which provides that the FVRA "shall not apply" to specified offices. Had Congress wanted to make the FVRA inapplicable to offices for which an office-specific statute designated an acting official, it would have listed such statutes in section 3349c (entitled "Exclusion of certain offices"), not section 3347 (entitled "Exclusivity"). Neither section 508 nor the office of Attorney General appear in section 3349c.

**ii.** This conclusion is confirmed by the FVRA's statutory history. Under the Vacancies Act of 1868 (the FVRA's predecessor), the first assistant was also the default choice for filling a vacant Senate-confirmed position, and the President was generally able to depart from that default by selecting another Senate-confirmed officer. 5 U.S.C. § 3347 (1994). That additional presidential authority contemplated in the Vacancies Act was expressly made inapplicable "to a vacancy in the office of Attorney General." *Id*; *see also* Rev. Stat. § 179 (2d ed. 1878). That provision—not section 508—made the prior Vacancies Act inapplicable to the office of the Attorney General; indeed, that provision would have been superfluous if section 508 itself made other vacancy statutes inapplicable, as Plaintiff now contends.

Notably, in the process of drafting the FVRA, Congress considered whether the office of Attorney General would also be excluded from the additional authorities vested in the President by the FVRA. An earlier provision in the FVRA, as reported in the Senate Committee Report accompanying the bill that was the basis for the FVRA, would have provided that "[w]ith respect to the office of the Attorney General . . . the provisions of section 508 of title 28 shall be applicable," *see* S. Rep. No. 105-250, at 15 (1998), 1998 WL 404532, at 25 ("Senate Report"), which the Report stated would have limited the President's authority to designate a person to perform the functions and duties of the Attorney General via the FVRA, see *id*. at 13. But Congress omitted that provision from the final version of the Act and indeed did away altogether with the Vacancies Act's exclusion for the

office of Attorney General.  *See* 5 U.S.C. §§ 3345, 3347, 3349c.  Nothing in the FVRA bars the President from designating someone to act as Acting Attorney General under that law.

**iii.**  The FVRA's legislative history underscores that statutes like section 508 have long been understood to work in conjunction with—not displace—the FVRA.  The Senate Committee Report expressly disavows the view that, where an office-specific vacancy statute is available, the FVRA is no longer an option.  *See* Senate Report at 17.  Accompanying the bill that was the basis for the FVRA, the Senate Report provided a list of then-existing, office-specific vacancy statutes, including section 508, that the FVRA would "retain."  *Id.*  With respect to these statutes, the Report makes clear that the FVRA "would continue to provide an *alternative* procedure for temporarily occupying the office." *Id.* (emphasis added).  That statement relied on a proposed provision, *see id.* at 26 (proposed 5 U.S.C. § 3347(a)(2)(A) and (B)), that parallels the language ultimately enacted as subparagraphs (A) and (B) of 5 U.S.C. § 3347(a)(1).  The Senate Report thus confirms that the FVRA and the listed statutes would be available as alternative mechanisms for addressing a vacancy in a covered office.

**iv.**  In light of the FVRA's text, structure, and statutory and legislative history, the courts that have addressed the question have unsurprisingly concluded that office-specific vacancy statutes do not displace the President's FVRA authority.  In *Hooks v. Kitsap Tenant Support Services, Inc.*, 816 F.3d 550 (9th Cir. 2016), the Ninth Circuit rejected the argument that the FVRA was inapplicable because an office-specific statute "provide[d] the exclusive means for the President to appoint an Acting General Counsel" of the National Labor Relations Board ("NLRB").  *Id.* at 555-56 (discussing 29 U.S.C. § 153(d)).  The court concluded that "the text of the respective statutes" "belied" any such argument.  *Id.* at 555.  Examining the FVRA's exclusivity provision, 5 U.S.C. § 3347, it concluded that the National Labor Relations Act qualified as "another statute [that] expressly provides a means for filling" a vacancy within the meaning of that provision.  *Id.* at 556.  In addition to the text, the court relied on the FVRA's Senate Report to conclude "that the FVRA retains the vacancy-filling mechanisms in forty different [office-specific vacancy] statutes."  *Id.* at 556 (citing Senate Report at 17).  Therefore, "neither the FVRA nor the [National Labor Relations Act] is the *exclusive* means of

appointing an Acting General Counsel of the NLRB." *Id.* Both statutes are available to fill the vacancy.

Plaintiff argues that *Hooks* is not persuasive because it relied on the Senate Report and hence "was apparently unaware that the Report makes clear that office-specific designation statutes remained 'exceptions' to the bill." Mem. of Law in Supp. of Mot. for Prelim. Inj. ("Br.") at 29, ECF No. 2-2. But Plaintiff ignores the fact that the Ninth Circuit first considered the FVRA's text to reach its decision. *See id.* at 555. And, in any event, the court's reliance on the Senate Report was entirely proper because the Report's understanding of the FVRA's coexistence with other office-specific vacancy statutes is well grounded in the language and structure of section 3347 as enacted. Indeed, the court understood precisely that these office-specific statutes are "exceptions" to the FVRA's exclusivity proviso and hence operate alongside each other.

Plaintiff also attempts to distinguish *Hooks* on the ground that the NLRB statute merely authorized the presidential designation of a particular acting official, whereas section 508 directly designates such an official and does not permit a presidential designation. *See* Br. at 29 (arguing that the NLRB statute authorized the President to "choose the official in that case"). But the Ninth Circuit's reasoning in no way turned on Plaintiff's proposed direction. The FVRA's exclusivity provision expressly covers both types of office-specific vacancy provisions: authorization provisions in section 3347(a)(1)(A), and designation provisions in section 3347(a)(1)(B). And Plaintiff's proposed distinction fails on its own terms because section 508 does *not* designate that the Deputy Attorney General "must" or "shall" serve as Acting Attorney General, only that he "may" do so, and thus it is not distinguishable from the permissive NLRB statute at issue in *Hooks*. Again, if Congress intended designation provisions, such as section 508, to render the FVRA inapplicable, it would have included them in section 3349c's exceptions to applicability rather than section 3347(a)(1)(B)'s exception to exclusivity.

An analogous attempt to distinguish *Hooks* was recently rejected by another judge of this district, who upheld the FVRA's coexistence with a designation provision in an office-specific vacancy statute. *See English v. Trump*, 279 F. Supp. 3d 307 (D.D.C. 2018), *appeal dismissed,* No. 18-5007, 2018

WL 3526296 (D.C. Cir. July 13, 2018).  In *English*, the court rejected the argument that the FVRA is displaced by an office-specific statute (there, a provision in the Dodd-Frank Act relating to the Consumer Financial Protection Bureau ("CFPB")).  *Id.* at 331.  Indeed, the CFPB-specific statute, which post-dated the FVRA, provides that the CFPB Deputy Director "*shall . . .* serve as acting Director in the absence or unavailability of the Director." 12 U.S.C. § 5491(b)(5) (emphasis added). The court nevertheless held that this mandatory, newer language coexists with, and is implicitly qualified by, the FVRA's permissive language providing that the President also "*may* direct" certain eligible officials to serve in an acting capacity.  *English*, 279 F. Supp. 3d at 317, 323-24 (emphasis added).  The court correctly concluded that the President could invoke its authority to designate someone to serve as Acting CFPB Director pursuant to the FVRA.  *Id.* at 333.

Seeking to distinguish *English,* Plaintiff cites a passage in the decision noting that it was unclear "whether the Deputy Director provision even covers a vacancy created by [the Director's] resignation" because Congress used the terms "absence or unavailability," rather than "vacancy" or "resignation." *English*, 279 F. Supp. 3d at 322; *see* Br. at 30.  But this attempted distinction is foreclosed by the court's conclusion that the words "absence or unavailability" could also "reasonably be read to include the vacancy created by [the Director's] resignation" and that "even assuming that a vacancy created by a resignation is an 'absence or [un]availability'" under the CFPB statute, Congress intended the statute to supplement, not displace, the FVRA.  *English*, 279 F. Supp. 3d at 322.

Plaintiff's additional attempts to distinguish *English* fail on their face.  He argues that the district court listed section 508 as an example of a statute that displaces the FVRA.  *See* Br. at 30.  But Plaintiff misreads *English*.  No court has found an office-specific vacancy statute to displace the FVRA.  Far from stating that section 508 displaces the FVRA as a whole, the *English* court only listed section 508 as an example of a statute that explicitly refers to a "vacancy." *English*, 279 F. Supp. 3d at 322.  Notably, it is listed next to the NLRB General Counsel statute at issue in *Hooks*, which *English* identifies as an example of a statute that coexists with, rather than displaces, the FVRA.  *Id.*  If anything, *English* recognizes that section 508 is on equal footing with the NLRB statute in *Hooks*.

Moreover, *English* held that the President could designate an acting CFPB Director under the FVRA *notwithstanding* that the CFPB Deputy Director provision both contained mandatory language (*i.e.*, "shall") and post-dated the FVRA.  Plaintiff does not address these reasons why this is an *a fortiori* case.  Instead, he erroneously argues that section 508 *requires* the Deputy Attorney General to be the acting Attorney General, notwithstanding that section 508 says nothing about the President's authority to designate an acting officer, and says only the Deputy Attorney General "may" serve in that role.  Unlike the Dodd-Frank Act in *English*, section 508 long predates the enactment of the FVRA, and thus it is even clearer that it is to coexist with the FVRA pursuant to the FVRA's exclusivity proviso.  5 U.S.C. § 3347(a)(1).

**v.**  Moreover, the availability of an incumbent Deputy Attorney General who may serve as Acting Attorney General under section 508(a) does not affect the President's authority to designate someone else under sections 3345(a)(2)-(3).  The President's authority in section 3345(a)(2) and (a)(3) to designate an acting officer other than the first assistant who would otherwise temporarily fill a vacancy by operation of section 3345(a)(1) does not depend, by the statute's plain terms, on whether there is currently a first assistant.  *See* 5 U.S.C. § 3345(a)(2), (3) (authorizing designations "[n]otwithstanding paragraph (1)").  The FVRA leaves to the President the choice to designate someone other than the first assistant.  Likewise, nothing in section 508 suggests that the FVRA's authorization to designate someone other than the first assistant does not apply when there is an incumbent official in the line of succession available to fill the vacancy.  To the contrary, when Congress amended the FVRA, it left in place section 508's express statement that the Deputy Attorney General is the "first assistant to the Attorney General" for purposes of 5 U.S.C. § 3345, which is the first section of the FVRA.  28 U.S.C. § 508(a).  And again, section 508 further provides that the Deputy Attorney General "may" serve as Acting Attorney General, not that he "must," underscoring that the FVRA remains an alternative means for the designation of an acting officer.

In conclusion, where one of the section 3347(a) exceptions applies—such as here, where section 3347(a)(1)(B) applies by virtue of section 508—the FVRA is no longer the "exclusive means" of designating an acting officer, but it remains an "applicable" option under sections 3345 and 3349c.

There are thus two available options for addressing a vacancy in the office of the Attorney General: (1) the FVRA's designation methods in section 3345; and (2) the line of succession in section 508.

> **b.  Principles of statutory construction preclude Plaintiff's interpretation of the FVRA's relationship with section 508.**

Multiple canons of statutory construction confirm the foregoing textual analysis.  First, the harmonious-reading canon favors Defendant's interpretation here.  Plaintiff tries to drum up a conflict between section 508's permissive language that the Deputy Attorney General "may" serve as Acting Attorney General and the FVRA's permissive language that the President also "may direct" certain eligible officials to serve in an acting capacity.  But no real conflict exists between these statutes, let alone an "irreconcilable" one, as Plaintiff must show.  *J.E.M. Ag. Supply, Inc. v. Pioneer Hi-Bred Int'l Inc.*, 534 U.S. 124, 141-142 (2001); *Howard v. Pritzker*, 775 F.3d 430, 437 (D.C. Cir. 2015) ("Statutes are to be considered irreconcilably conflicting where 'there is a positive repugnancy between them' or 'they cannot mutually coexist.'") (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976)).

Plaintiff simply says that only one of the two statutes can apply under the current circumstances because each statute produces a different result.  *See* Br. at 16-19 & n. 6 (explaining that under section 508, Deputy Attorney General Rosenstein is the Acting Attorney General, and under the FVRA, Mr. Whitaker is the Acting Attorney General).  But "[i]t is not enough to show that the two statutes produce differing results when applied to the same factual situation, for that no more than states the problem.  Rather, 'when two statutes are capable of co-existence, it is the duty of the courts … to regard each as effective.'"  *Radzanower*, 426 U.S. at 155 (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)); *see also PLIVA, Inc. v. Mensing*, 564 U.S. 604, 622 (2011) ("[I]f by any fair course of reasoning the two [statutes] can be reconciled, both *shall* stand.") (emphasis added).

The foregoing textual analysis demonstrates that section 508 and the FVRA's designation options are far more than simply "capable of coexistence" in this case and thus the Court must "regard each as effective."  *J.E.M. Ag. Supply*, 534 U.S. at 143-44.  To be clear, the FVRA itself speaks in mandatory terms.  It provides that the first assistant to a vacant office covered by the FVRA "*shall* perform the functions and duties of the office temporarily in an acting capacity" but that the President

"may" direct certain other persons to perform those functions and duties, "notwithstanding" that rule. 5 U.S.C. § 3345(a) (emphasis added). Given this unequivocal language, the FVRA and section 508 should be construed to operate alongside each other.

Nor does the principle that the specific governs the general, upon which Plaintiff places so much weight, *see* Br. at 18-19, support his position. This principle is "not appropriately invoked in this case" because it applies "only in the face of irreconcilably conflicting statutes." *English*, 279 F. Supp. 3d at 325 (quoting *Detweiler v. Pena*, 38 F.3d 591, 594 (D.C. Cir. 1994)). As shown above, there is no such conflict here.

Further, the related statutory-construction principle "that Congress legislates with a full understanding of existing law[]" further undermines any argument that the FVRA is inapplicable to a vacancy in the office of Attorney General. *Am. Fed'n of Gov't Emps., Local 3295 v. FLRA*, 46 F.3d 73, 78 (D.C. Cir. 1995), *amended,* (D.C. Cir. Feb. 27, 1995); *see also Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (applying presumption even when existing law was a well-established judicial "gloss" on statutory language). Congress knew that certain authorities in the Vacancies Act were expressly made inapplicable "to a vacancy in the office of Attorney General," 5 U.S.C. § 3347 (1994), and even contemplated in an earlier bill that the Attorney General would continue to be excluded from the additional authorities vested in the President by the FVRA, *see* Senate Report at 25. Nonetheless, Congress eliminated the exclusion altogether and rejected the proposed limitation to the President's authority to designate an Acting Attorney General. *See id.* at 26. The deletion of that limitation means that the office of Attorney General is within the category of offices referred to in 5 U.S.C. § 3347(a)(1)(A) and (B) for which the FVRA is an alternative to the agency-specific statute. Indeed, as discussed above, 28 U.S.C. § 508 was included in the Senate Report's list of then-existing agency-specific statutes retained by the FVRA and that Congress intended to operate alongside each other. *See* Senate Report at 16.

"Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-443 (1987) (citation omitted). Because the

27

FVRA omitted—and therefore eliminated—the prior limitation of the Vacancies Act, Congress's choice not to limit the President's authority to designate an Acting Attorney General must be given effect as written in the FVRA. *See, e.g.*, *Murphy v. Smith*, 138 S. Ct. 784, 789 (2018) (giving effect to Congress's purposeful omission of prior statutory language).

Finally, the FVRA's application to the office of the Attorney General does not render section 508 superfluous, as Plaintiff appears to suggest. Rather, section 508 would serve at least three purposes not served by section 3345(a)(1) of the FVRA. First, it would allow the Deputy Attorney General to serve as Acting Attorney General beyond the FVRA's time limitations. *See* 5 U.S.C. § 3346; Senate Report at 17 ("Most of these retained statutes[, including section 508,] do not place time restrictions on the length of [service of] an acting officer."). Second, it would allow the Deputy Attorney General (and others in the line of succession) to fill a vacancy in situations where the FVRA itself would not authorize it. *See* 5 U.S.C. § 3345(b). Third, it eliminates potential confusion over who the "first assistant" is in the Department for purposes of the FVRA's default rule in section 3345(a)(1). *See Guidance on the Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 63 (1999) ("*FVRA Guidance*") (noting that the FVRA "does not define the term 'first assistant'" and indicating some cause for doubt that an official "not designated by statute or regulation" could "qualify as first assistants").

Because Plaintiff argues that section 508 exclusively governs the mechanism for filling a vacancy in the office of Attorney General, Plaintiff has no option but to say that the phrase "first assistant" in section 508 serves no purpose. *See* Br. at 28 (arguing that "first assistant provision" in section 508 "does nothing"). But, the provision is important, if not necessary, for purposes of the FVRA's default rule. *See FVRA Guidance*, 23 Op. O.L.C. at 63. The reference shows that Congress understood the statute to operate alongside the FVRA. Plaintiff's proposed interpretation renders language in section 508 wholly superfluous and therefore must be rejected.

### c. Office-specific vacancy statutes comparable to section 508 have never before been interpreted to displace the FVRA.

The Attorney General is simply one of many heads of departments forming the President's Cabinet (along with other cabinet-rank officials) who is subject to an office-specific vacancy statute providing that its deputy (and others in the Department) "may" or "shall" serve as the acting head in the event of a vacancy. 28 U.S.C. § 508.[6] No court has ever found that any of these statutes in fact remove the offices they cover from the scope of the FVRA, even though they all unambiguously address vacancies. Plaintiff cites no authority to the contrary.

Presidents have consistently and explicitly invoked their FVRA authority to make acting-officer designations that would be barred if the office-specific statutes were to set out exclusive, mandatory succession plans, as Plaintiff suggests. Using their FVRA authority, multiple presidents have long provided for orders of succession for offices covered by office-specific statutes and individually designated someone other than the deputy designated in an office-specific statute to serve as the acting agency head.[7] Notably, such FVRA designations have even bypassed the extant deputy

---

[6] *See, e.g.*, 5 U.S.C. app. 1, Reorganization Plan No. 1 of 1953 § 2 (Health and Human Services); 5 U.S.C. app. 1, Reorganization Plan No. 3 of 1970 § 1(c) (Environmental Protection Agency); 10 U.S.C. § 132(b) (Secretary of Defense); 15 U.S.C. § 633(b)(1) (Small Business Administration); 20 U.S.C. § 3412(a)(1) (Education); 29 U.S.C. § 552 (Labor); 31 U.S.C. § 301(c)(2) (Treasury); 42 U.S.C. § 7132(a) (Energy).

[7] *See, e.g., Providing an Order of Succession Within the Department of Defense*, Exec. Order No. 13,394, 70 Fed. Reg. 76,665 (Dec. 22, 2005); *Providing an Order of Succession Within the Department of Defense*, Exec. Order No. 13,533, 75 Fed. Reg. 10,163 (Mar. 1, 2010); 5 U.S.C. § 3345 note (listing succession plans established under the FVRA for the Departments of Labor, Treasury, Health and Human Services, the Environmental Protection Agency, the Office of Personnel Management, the Office of the Director of National Intelligence, and the National Archives and Records Administration); *see also* Presidential Designations of John Whitmore (Small Business Administration, Feb. 2, 2001), Marianne Horinko (Environmental Protection Agency, July 11, 2003, effective July 12, 2003), James Lambright (Export-Import Bank, July 14, 2005, effective July 21, 2005), Beth Cobert (Office of Personnel Management, July 10, 2015), Joseph Loddo (Small Business Administration, Jan. 17, 2017, effective Jan. 20, 2017), Grace Bochenek (Energy, Jan. 17, 2017, effective Jan. 20, 2017), Norris Cochran (Health and Human Services, Jan. 17, 2017, effective Jan. 20, 2017), Edward Hugler (Labor, effective Jan. 20, 2017), Adam Szubin (Treasury, Jan. 17, 2017, effective Jan. 20, 2017), John "Mick" Mulvaney (CFPB, Nov. 24, 2017, effective Nov. 25, 2017).

designated in the office-specific statute.[8]  Of particular relevance to this case, the President designated the Assistant Attorney General for the Civil Division in 2007 to act as Attorney General, even though the Solicitor General was available under the section 508 succession order.  *See Authority of the President to Name an Acting Attorney General*, 31 Op. O.L.C. 208, 208 (2007) (2007 OLC Op.).  At no point have these office-specific statutes been read to preclude such presidential designations.

This record of executive practice is consistent with the Office of Legal Counsel's longstanding and publicly expressed interpretation of the FVRA.  *See, e.g.*, OLC Op.; Mem. from Steven A. Engel, Asst. Att'y Gen., to Donald F. McGahn II, Counsel to the President, *Designating an Acting Director of the Bureau of Consumer Financial Protection*, at 4-8 & nn. 2-3 (Nov. 25, 2017); 2007 OLC Op.; *Designation of Acting Director of Office of Management and Budget*, 27 Op. O.L.C. 121, 121 n.1 (2003).  On four occasions in the past fifteen years, OLC has formally opined in published opinions that office-specific statutes regarding an acting officer provide a route to designate an acting officer without displacing the President's FVRA options.  OLC's conclusion that section 508 does not preclude the President's authority to designate Mr. Whitaker under the FVRA is firmly rooted in that office's well-established precedent, including its 2007 opinion on the President's authority to name an Acting Attorney General.

In conclusion, section 508 and the FVRA are best read in harmony, not in tension, and to allow the President to designate an Acting Attorney General.  The President validly exercised that authority here and Mr. Whitaker is a permissible designee under the terms of the FVRA.

---

[8] For example, on August 11, 2008, the President designated Michael Hager, Assistant Secretary of Veterans Affairs, to serve as Acting Director of the Office of Personnel Management, notwithstanding that Howard Weizmann was Deputy Director.  Similarly, on August 13, 2008, the President designated Santanu Baruah, Assistant Secretary of Commerce for Economic Development, as Acting Administrator of the Small Business Administration, notwithstanding that Joyita Carranza was Deputy Administrator.

**B. The Presidential designation of Mr. Whitaker as Acting Attorney General does not violate the Appointments Clause.**

Plaintiff argues that the President's designation of Mr. Whitaker as Acting Attorney General under the FVRA violates the Appointments Clause because the clause requires a Senate-confirmed individual to perform the functions of Attorney General, even temporarily. That is incorrect.

Plaintiff's position focuses heavily on the undisputed propositions that the Appointments Clause requires principal officers to be Senate-confirmed and that the Attorney General is a principal officer because he holds a continuing office and reports only to the President. *See* Br. at 1. But none of that answers the question presented here because it does not inevitably follow that an individual who *temporarily* performs the functions of a principal office in an *acting* capacity is also a principal officer. Given the absence of any express instruction in the Appointments Clause, "historical practice" on this question implicating the separation of powers is entitled to "significant weight." *NLRB v. Noel Canning*, 134 S. Ct. 2550, 2559 (2014); *see also Okanogan, Methow, San Poelis (or San Poil), Nespelem, Colville, and Lake Indian Tribes or Bands of State of Wash. v. United States*, 279 U.S. 655, 689 (1929). And here, there is ample—indeed, decisive—historical practice and precedent from *all three* branches of government that temporary designation as an acting agency head does not require the Senate's advice and consent because the individual does not thereby become a principal officer.[9]

**1. Several acts of Congress passed in three different centuries have authorized the designation of acting principal officers who are not Senate confirmed.**

Starting almost immediately after the Founding, Congress repeatedly has "authoriz[ed] the President to direct certain officials to temporarily carry out the duties of a vacant PAS office [*i.e.*, one requiring Presidential Appointment and Senate confirmation] in an acting capacity, without Senate confirmation." *NLRB v. SW General, Inc.*, 137 S. Ct. 929, 934, (2017). The first of these statutes was enacted in 1792 when Congress "authorized the appointment of 'any person or persons' to fill specific

---

[9] This Court need only decide that an acting principal officer is not himself a principal officer. It is unnecessary to further decide whether the temporary nature of the position renders it an inferior office (*cf. Morrison v. Olson*, 487 U.S. 654, 672 (1988)); or not an office at all (*cf. Auffmordt v. Hedden*, 137 U.S. 310, 326-27 (1890)), because Plaintiff does not dispute that the President's designation of Mr. Whitaker satisfies the Appointments Clause's requirements for an inferior officer.

vacancies in the Departments of State, Treasury, and War." *Id.* at 935 (quoting Act of May 8, 1792, ch. 37, § 8, 1 Stat. 279, 281). The statute expressly applied to vacancies in the position of Secretary in these three Departments—indisputably principal officers. *See* Act of May 8, 1792, ch. 37, § 8, 1 Stat. 279, 281. And it authorized the President to choose "any person" to fill such a vacancy—regardless of whether the "person" had been Senate-confirmed or even held any federal office—"until the permanent officeholder could resume his duties or a successor was appointed." *SW General*, 137 S. Ct. at 935.

The Act of May 8, 1792 is of special importance, as "early congressional practice . . . provides 'contemporaneous and weighty evidence of the Constitution's meaning.'" *Alden v. Maine*, 527 U.S. 706, 743-44 (1999) (quoting *Printz v. United States*, 521 U.S. 898, 905 (1997)). "[T]he 'construction placed upon the Constitution'" by the Second Congress in the 1792 Act, "'many of whom were members of the convention which framed it, is of itself entitled to very great weight.'" *Golan v. Holder*, 565 U.S. 302, 321 (2012) (quoting *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 57 (1884)). Here, the Second Congress's enactment of the 1792 Act reflects a clear understanding that the Constitution does not compel Senate confirmation for persons who are merely authorized to temporarily carry out the duties of a vacant principal office in an acting capacity.

Congress has consistently followed that understanding to this day. In 1795, Congress amended the 1792 Act to "impose[ ] a six-month limit on acting service," *SW General*, 137 S. Ct. at 935 (citing Act of Feb. 13, 1795, ch. 21, 1 Stat. 415), and in 1863, Congress extended the act to all vacancies in the office of "the head of any Executive Department of the Government, or of any officer of either of the said Departments whose appointment is not in the head thereof," Act of Feb. 20, 1863, ch. 45, § 1, 12 Stat. 656, 656.

In 1868, Congress enacted the Vacancies Act, which provided that in the case of a vacancy "of the head of any executive department of the government, the first or sole assistant thereof shall . . . perform the duties of such head." Act of July 23, 1868, ch. 227, § 1, 15 Stat. 168; *see also id.* § 3, 15 Stat. at 168 (specifying a ten-day time limit in cases of death or resignation). Although the Vacancies Act further authorized the President to bypass the "first assistant" default rule and designate

any Senate-confirmed official to fill the vacancy, *see id.*, the statute's default rule preserved the possibility that a non-Senate-confirmed "first assistant" would act as head of an Executive Department.

Over the next 120 years, Congress repeatedly amended the Vacancies Act to extend the time limits for acting service, but never eliminated the possibility that non-Senate-confirmed first assistants could serve as acting agency heads. In fact, in 1988, Congress amended the statute to cover principal offices that are not in "Departments" and thus are less likely to have Senate-confirmed first assistants. Pub. L. No. 100-398, § 7(b), 102 Stat. 985, 988 (1988).

As discussed, in 1998, Congress replaced the Vacancies Act with the FVRA, which applies to nearly all executive Senate-confirmed offices, including agency heads. *See* 5 U.S.C. § 3345(a); *see id.* § 3349c(1)-(3) (excluding only certain members of multi-member boards, commissions, or similar entities). Out of the three designation methods in the FVRA, two of them unambiguously authorize non-Senate-confirmed individuals to serve as acting principal officers: (1) non-Senate-confirmed first assistants under section 3345(a)(1); and (2) "officer[s] or employee[s]" under section 3345(a)(3). And in addition to the FVRA, Congress has enacted multiple statutes that enable the temporary service of non-Senate-confirmed individuals when the office of a Senate-confirmed agency head is vacant.[10] For example, consider the example of the CIA. The CIA's Deputy Director is not Senate confirmed. *See* 50 U.S.C. § 3037(a). Thus, when the CIA Director was sworn-in as the Secretary of State on April 26, 2018, the Deputy Director (who had been appointed by President Trump, without the Senate's advice and consent) assumed the role of Acting Director. She continued to perform as Acting Director until May 21, 2018, when she was sworn-in as Director after Senate confirmation and appointment. *See* https://www.cia.gov/news-information/press-releases-statements/2018-press-releases-

---

[10] *See, e.g.,* 12 U.S.C. § 4512(f) (Federal Housing Finance Agency); *id.* § 5491(b)(5) (CFPB); 20 U.S.C. § 3412(a)(1) (Education); 21 U.S.C. § 1703(a)(3) (Office of National Drug Control Policy); 31 U.S.C. § 502(f) (Office of Management and Budget); 38 U.S.C. § 304 (Veterans Affairs); 40 U.S.C. § 302(b) (General Services Administration); 42 U.S.C. § 7132(a) (Energy); 44 U.S.C. § 2103(c) (Archives); 49 U.S.C. § 102(e) (Transportation). .

statements/gina-haspel-assumes-role-of-acting-director-of-cia.html;        https://www.cia.gov/news-information/blog/2018/gina-haspel-sworn-in-as-first-female-cia-director.html

The uninterrupted legislative practice of authorizing acting officers to perform the duties associated with a temporarily vacant principal office and not limiting the pool of eligible individuals to those who already have Senate-confirmed offices strongly supports the constitutionality of Mr. Whitaker's designation as Acting Attorney General. Indeed, if Plaintiff were correct that only Senate-confirmed officers could temporarily serve as *acting* principal officers, then Congress's continuous legislative practice at least from 1792 until 2010 would have violated the Constitution.

### 2. The Executive Branch has repeatedly designated acting principal officers who are not Senate confirmed.

The Executive Branch has repeatedly exercised its authority under the statutes enacted by Congress to fill vacancies in principal offices with individuals other than Senate-confirmed officers. In fact, in a historical "non-exhaustive survey," OLC identified "over 160 occasions between 1809 and 1860 in which non-Senate-confirmed persons served temporarily as an acting or ad interim principal officer in the Cabinet." OLC Op. at 10.[11]   In 1809, for example, President Jefferson designated John Smith, a non-Senate-confirmed chief clerk of the Department of War, to serve in his Cabinet as ad interim Secretary of War. OLC Op. at 13 (citing *Biographical Directory of the American Congress, 1774–1971*, at 14 (1971)). Non-Senate-confirmed chief clerks served temporarily as acting or ad interim heads of the Departments of State, the Treasury, War, the Navy, and the Interior on more than 125 occasions. *See id.* at 13-14. And non-Senate-confirmed Assistant Secretaries and Assistant Postmasters General were authorized at least twenty-one times to serve as acting Secretary of the Treasury and four times as ad interim Postmaster General. *See id.* at 14, 15. As President Buchanan

---

[11] Most of the 161 examples identified in the OLC opinion were listed in the evidence that was admitted during the impeachment trial of President Andrew Johnson. See 1 *Trial of Andrew Johnson, President of the United States, Before the Senate of the United States, on Impeachment by the House of Representatives for High Crimes and Misdemeanors* 575-88 (Washington, GPO 1868). Although that evidence included more than 161 uses of the statutes, OLC did not include instances that involved persons who already held another Senate-confirmed office, such as Commissioner of Indian Affairs, officer in the Army or Navy, Assistant Secretary of State, or Assistant Secretary of the Treasury (after that position became subject to Senate confirmation in March 1857).

stated in 1861, the "perfect lawfulness" of these temporary designations—where "[s]ometimes, the temporary officer was the commissioned head of another department," and *sometimes a subordinate in the same department*"—"ha[d] never, to [his] knowledge, been questioned or denied." Message from the President of the United States, 36th Cong., 2d Sess., Exec. Doc. No. 2, at 2 (1861) ("Buchanan's 1861 Message") (emphasis added).

Some of the temporary designations in the nineteenth-century lasted only a day or a few days, but others lasted for weeks or even months. For example, after the resignation of Henry Dearborn, John Smith served as Secretary of War for a 50-day period in 1809. *See Biographical Directory* at 14. During the Madison and Monroe Administrations, George Graham, another chief clerk of the Department of War, served as ad interim Secretary of War for more than a year—from October 1816 until December 1817. *Id.* at 15. Asbury Dickins, the chief clerk in the Department of the Treasury, served as ad interim Secretary of the Treasury for 48 days in 1831. *Id.* at 16; *In re Asbury Dickins*, 34th Cong., 1st Sess., Rep. C.C. 9, at 4 (Cl. 1856). And McClintock Young, another chief clerk in the Department of the Treasury, served as ad interim Secretary of the Treasury for more than two months after the resignation of Secretary John C. Spencer in 1844. *See Biographical Directory* at 17. Similarly, periods of *acting* service—that is, those that occurred while the principal officeholder was ill or away from Washington—sometimes lasted several weeks or months. For instance, Asbury Dickins served three separate stints of more than 40 days as acting Secretary of State in 1835 and 1836. *In re Asbury Dickins*, Rep. C.C. 9, at 5. During at least two of those stints, the incumbent Secretary of State was visiting his home state of Georgia. *See* Alvin Laroy Duckett, *John Forsyth: Political Tactician* 181, 197 (1962). At such times, there was no material difference, for purposes of the constitutional analysis, between an acting and an ad interim Secretary. In either case, there was no principal officer available to supervise how the temporary designee carried out the functions and duties of the office. Indeed, if the principal were available, there would not have been a need to designate somebody for a temporary period.

Moreover, even when such temporary designations occurred during a recess of the Senate, it is clear that they were not being seen as appointments under the Recess Appointments Clause. They

35

were not phrased as lasting until "the End of [the Senate's] next Session," as would be the case with a recess appointment. U.S. Const. art. II, § 2, cl. 3. Instead, they were described as lasting only until the appointment or arrival of a successor or until the principal's period of unavailability ended.[12] Indeed, George Graham's October 1816 appointment by President Madison as ad interim Secretary of War occurred during a recess of the Senate, but it was evidently not treated as a recess appointment, because he continued to serve for several months after two entire sessions of the Senate had come and gone.[13] In addition, when the next permanent appointee was nominated, the position was generally either described as being "vacant," or as being in the place of the previous permanent officeholder rather than the ad interim one.[14] Thus, President Buchanan was on solid ground when he explained that Presidents had used their statutory authority to name temporary officials "whether in a vacation or during the session of Congress." Buchanan's 1861 Message at 2.

More recent examples in which non-Senate-confirmed officers have been designated to act in the place of principal officers include: (1) the Comptroller General's authority to "designate an employee" of the General Accounting Office to be Acting Comptroller General, OLC Op. at 22 (citation omitted); (2) ten memoranda by Presidents George W. Bush and Barack Obama placing Chiefs of Staff in the lines of succession to be acting heads of agencies, and three executive orders by

---

[12] *See, e.g.*, 1 *Trial of Andrew Johnson* at 574-76 (reprinting or paraphrasing orders for Aaron O. Dayton (June 28, 1837), Jacob L. Martin (Oct. 16, 1837), John Boyle (May 12, 1831), and Asbury Dickins (June 21, 1831)).

[13] *See* 1 *Trial of Andrew Johnson* at 594-95 (listing dates of intervening Senate sessions). John C. Calhoun was recess-appointed as Secretary of War in October 1817, but he did not enter upon the duties of the office until December 10, 1817, ten days into the *third* Senate session after Graham's appointment. *See id.* at 594; *Biographical Directory* at 15.

[14] When Navy Chief Clerk Charles Hay was serving as ad interim Secretary of the Navy at the beginning of the Jackson Administration, *see Biographical Directory* at 16, President Jackson's nomination of John Branch described the position of Secretary as "being now vacant." S. Exec. J., 21st Cong., Special Sess. 8 (Mar. 9, 1829). When Secretary of the Treasury Spencer resigned on May 2, 1844, President Tyler appointed McClintock Young to perform the duties of the Secretary until a successor could be appointed and qualified. *See Trial of Andrew Johnson* at 579. When Tyler nominated George M. Bibb, more than six weeks later, to be the Secretary, he specified that Bibb was being nominated "vice John C. Spencer, resigned"—not in place of Young. *See* S. Exec. J., 28th Cong., 1st Sess. 349 (June 15, 1844).

President Obama placing a Chief of Staff above at least one confirmed officer within the same department, *see id.* at 22-23 & nn.13-14; and (3) nine presidential designations over the past three administrations of non-confirmed officials, including a Chief of Staff, serving as acting principal officers, *see id.* at 23 n.15.

The office of Attorney General, while historically unusual in some practical respects, presents no unique features suggesting any different constitutional treatment. Unlike some of the other members of the President's Cabinet, the Attorney General did not supervise an "executive department" until 1870 when the Department of Justice was established. *See* Act of June 22, 1870, ch. 150, § 1, 16 Stat. 162, 162. And because the Attorney General was not head of an "executive department," his office was not subject to the terms of the 1792, 1795, or 1863 statutes, or the Vacancies Act of 1868. Nonetheless, in 1854, Attorney General Cushing noted that the President had made "temporary appointment[s]" to the office of Attorney General. *Office and Duties of Atty. Gen.*, 6 Op. Att'y Gen. 326, 352 (1854). And although it was "questionable" whether the President had the statutory authority, Attorney General Cushing opined that perhaps "the power to make such temporary appointment is a constitutional one." *Id.* He recommended that Congress enact a vacancy statute specific to the office of Attorney General, which Congress eventually did when it enacted the predecessor of section 508 as part of the Department of Justice's 1870 organic statute.

In fact, Presidents designated Acting Attorneys General both before and after the 1854 Cushing opinion and some of those designations included non-Senate-confirmed individuals. In July 1866, for example, non-Senate-confirmed Assistant Attorney General J. Hubley Ashton served as ad interim Attorney General following Attorney General Speed's resignation. *See* OLC Op. at 17 (citing *Acting Attorneys General*, 8 Op. O.L.C. 39, 41 (1984)).[15]   In addition, between 1859 and 1868, non-

---

[15] As with the other Cabinet positions discussed in the preceding footnote, ad interim Attorneys General were not seen as filling the actual position of Attorney General. The next permanent Attorneys General were described as being nominated in place of the Attorneys General who had resigned, not of the ad interim Attorneys General. *See* S. Exec. J., 30th Cong., 1st Sess. 429 (June 15, 1848) (nominating Isaac Toucey "to be Attorney-General of the United States, in the place of Nathan Clifford, resigned"); 3 *The Diary of James K. Polk During His Presidency, 1845 to 1849*, at 393 (Milo Milton

Senate-confirmed Assistant Attorneys General signed several formal legal opinions as "Acting Attorney General" in instances when the incumbent Attorney General apparently was absent or unavailable. *See id.* at 17-18 & n. 11. Because the Vacancies Act of 1868 did not authorize the presidential designation of a non-Senate-confirmed Acting Attorney General, *see* 5 U.S.C. § 3347 (1994), there is no Attorney General-specific practice of non-Senate-confirmed officials serving in an acting capacity under that statute.

Ultimately, the office of Attorney General is not constitutionally different from other principal offices, particularly those in the Cabinet and other executive departments. These principal offices have been subject to the longstanding and consistent executive practice of authorizing their functions to be temporarily performed by non-Senate-confirmed persons, including numerous chief clerks and chiefs of staff. Again, for Plaintiff to establish a likelihood of success on the merits, this Court would have to conclude that all of these presidential designations dating back to 1809 were unconstitutional.

### 3. Supreme Court precedent has ratified the designation of acting principal officers who are not Senate confirmed.

In the nineteenth century, courts recognized the well-settled legislative and executive practice of authorizing unconfirmed chief clerks to act as heads of departments by approving their entitlement to payment for their temporary services as acting principal officers. *See, e.g.*, *In re Asbury Dickins*, 34th Cong., 1st Sess., Rep. C.C. 9, at 17, 1856 WL 4042, at *3 (Ct. Cl. 1856) (finding that chief clerk was entitled to additional compensation for services "as acting Secretary of the Treasury and as acting Secretary of State").

These decisions sometimes considered Appointments Clause issues. In *In re Cornelius Boyle*, for example, the Court of Claims held that a non-confirmed chief clerk of the Navy properly served as Acting Secretary of the Navy and that, under the Constitution, there was a difference between the

---

Quaife ed. 1910) (diary entry for Mar. 20, 1848, noting appointment of Secretary of the Navy John Y. Mason as "Acting Atto. Gen'l of the U. S. *ad interim*"); S. Exec. J., 39th Cong., 1st Sess. 994 (July 20, 1866) (nominating Henry Stanbery "to be Attorney General of the United States, to fill the vacancy occasioned by the resignation of James Speed," even though Assistant Attorney General Ashton had been serving as ad interim Attorney General since July 17).

office of Secretary and that of Acting Secretary because of the latter's "temporary" character.  34 Cong. Rep. C.C. 44, at 8, 1857 WL 4155, at *1-*3 (1857).  For that reason, the *Boyle* Court concluded, the presidential designation of a non-confirmed "Secretary *ad interim*" to perform the functions of that principal office was "in perfect consistency with the Constitution of the United States."  *Id.*

In 1898, the Supreme Court in *United States v. Eaton* likewise considered whether the Appointments Clause permits the designation of a non-confirmed subordinate officer "charged with the duty of temporarily performing the functions" of a principal officer.  169 U.S. 331, 343 (1898).  In that case, Lewis Eaton, a missionary who was not employed by the federal government, was appointed as vice-consul-general and directed to take over the consulate after the consul-general's departure.  *Id.* at 331-32.  Eaton then took charge of the consulate as "acting consul general of the United States at Bangkok" for almost a year.  *Id.* at 332-33.  In a dispute over salary payments, the constitutionality of Eaton's appointment was challenged and the Court upheld both Eaton's appointment and the underlying statutory scheme providing for his appointment.  *Id.* at 334-35, 352.  Specifically, the Supreme Court concluded that, although "Consuls" are principal officers requiring Senate confirmation, U.S. Const. art. II, § 2, cl. 2, Eaton's "performance of the duty of the superior for a limited time, and under special and temporary conditions" did "not thereby transform[ ] [him] into the superior and permanent official."  *Eaton*, 169 U.S. at 343.

Plaintiff attempts to limit the holding of *Eaton* to the facts presented in that case, including the specific statute authorizing the vice-consul's temporary designation and the exigent circumstances that led to the consul-general's vacancy.  *See* Br. at 6-8.  There are a number of problems with Plaintiff's contention.

First, *Eaton* itself made clear that its holding was not limited to the exigencies of Eaton's particular appointment.  Rather, the Supreme Court stated that if non-confirmed inferior officers were "transformed" into principal officers by virtue of their temporary service, such a holding "would render void any and every delegation of power to an inferior to perform *under any circumstances or exigency* . . . and the discharge of administrative duties would be seriously hindered."  *Eaton*, 169 U.S. at 343 (emphasis added).

Second, the reasoning of *Eaton* extended well beyond the particular facts presented in that case. The *Eaton* Court explained that Congress's "manifest purpose" in distinguishing between consuls and vice-consuls was to "limit the period of duty to be performed by the vice-consuls, and thereby to deprive them of the character of 'consuls,' in the broader and more permanent sense of that word." 169 U.S. at 343. Thus, the "special and temporary conditions" recognized in *Eaton* were not the particular exigency presented in that case, but the limits of the then-regulatory scheme, which permitted service in any case of "the absence or the temporary inability of the consul," whatever the cause. *Id.* at 342-43; *see also id.* at 341. In view of the long history of appointments providing for the *temporary* performance of a principal office, *Eaton* simply confirmed the general rule that such appointments do not "transform[ ]" the acting official "into the superior and permanent official" requiring the Senate's confirmation. 169 U.S. at 343-44 (relying on Attorney General Cushing's 1855 opinion regarding the longstanding practice on the appointment of consular officials) (citing *Appointment of Consuls*, 7 Op. Att'y Gen. 242, 262 (1855)). In other words, the *Eaton* Court reached the same conclusion as the *Boyle* court—that temporarily performing the duties of a principal office is not the same as holding the office itself. And this general rule has applied historically to all sorts of principal officers, not just Consuls exercising foreign policy authority in a remote location or facing exigent circumstances involving sickness or death, as Plaintiff claims.

Third, the Supreme Court's subsequent decisions have not read *Eaton* so narrowly as Plaintiff proposes. Instead, they have cited it repeatedly for the proposition that temporarily performing the duties of a principal office does not make one a principal officer. *See, e.g., Edmond v. United States*, 520 U.S. 651, 661-63 (1997); *Morrison v. Olson*, 487 U.S. 654, 672-73 (1988).

Fourth, Justice Thomas's reference to *Eaton* in his concurrence in *SW General* is not to the contrary. *See SW General*, 137 S. Ct. at 949 & n.1 (Thomas, J., concurring). Justice Thomas distinguished *Eaton* on the ground that the acting designation in *SW General* was not "special and temporary" because it had remained in place "for more than three years in an office limited by statute to a 4-year term." *Id.* at 946 n.1 (Thomas, J., concurring). At no point did Justice Thomas assert the need for a particular "emergency" to justify the invocation of *Eaton*. Rather, his observation is

consistent with Defendant's view that a presidential designation of an acting principal officer "should not continue beyond a reasonable time." *Status of the Acting Director, Office of Management and Budget*, 1 Op. O.L.C. 287, 289-90 (1977). Indeed, *Eaton* upheld the constitutionality of a designation that lasted 310 days. *Eaton*, 169 U.S. at 332-33. By comparison, Mr. Whitaker's designation under the FVRA is unquestionably valid, as it is only a month old and is subject to section 3346(a)(1)'s 210-day time limitation, subject to potential statutorily permitted extensions, absent the confirmation of a permanent successor. Here, any concern with the duration of Mr. Whitaker's temporary designation is particularly chimerical given that the President recently announced that he plans to nominate William P. Barr to be Attorney General.

Finally, Plaintiff argues in passing that the equivalent of the vice-consul in *Eaton* is Deputy Attorney General Rod Rosenstein, as well as others listed in the line of succession in section 508. *See* Br. at 8-9. But Plaintiff offers no principled explanation as to why that is the case—particularly, why someone designated pursuant to section 508 resembles the vice-consul in *Eaton*, but not someone designated pursuant to the FVRA. Because the vice-consul was an unconfirmed official, Plaintiff concedes, as he must, that the designation of an official under section 508 would be constitutional even if he "were not confirmed by the Senate." Br. at 8. According to Plaintiff, such designation would be constitutional because such officials were once "subordinates" to the Attorney General and the statute thus reflects Congress's decision to identify individuals whose job was "designed so that they report to the Attorney General." *Id.* That argument misses the point in at least two ways.

First, as discussed above, the *Eaton* Court's constitutional rationale was not limited to the specific circumstances surrounding Eaton's appointment. Particularly, the Court's rationale did not turn on the particular position of the subordinate official that Congress had authorized to serve as an acting official, but on its temporary character. For this reason, *Eaton* confirms the historical

41

understanding that a temporary designation does not transform an acting official into a principal officer for purposes of the Appointments Clause.[16]

Second, Congress expressly authorized temporary acting service of a principal office through the FVRA, in addition to section 508. Therefore, if the statutory designation of a section 508 official (even a non-Senate-confirmed official) is constitutional under *Eaton*, as Plaintiff concedes, then so is the designation made here under the FVRA.

In conclusion, the general rule confirmed by *Eaton*, and quoted with approval in subsequent Supreme Court decisions, forecloses Plaintiff's contrary position here.

### 4. Serious practical consequences and constitutional concerns militate against Plaintiff's proposed constitutional rule.

Plaintiff's position that acting service in a principal office—including one that reports only to President, such as the head of a Department or executive agency—requires a Senate-confirmed officer despite its temporary nature raises several concerns. Although Senate confirmation undoubtedly serves an important constitutional check on the President's selection of individuals to assist him in faithfully executing the laws, *see Edmond*, 520 U.S. at 659, the more-than-two-century-long tradition of temporary service by acting agency heads without Senate confirmation reflects agreement between the political branches that this practice is not only permissible, but in fact essential to overcome the frequent and unavoidable delays inherent in the confirmation process.

If Plaintiff were correct that the Constitution requires Senate confirmation for all acting officials serving temporarily in principal offices, the proper functioning of the Executive Branch and the President's constitutional responsibility to "take care" that the laws are faithfully executed would be seriously compromised. *Eaton*, 169 U.S. at 343 (explaining that a holding that an acting consul is a principal officer would "seriously hinder[ ]" "the discharge of administrative duties"). For example,

---

[16] In any event, there can be no question that Mr. Whitaker, former Chief of Staff and Senior Counselor to the Attorney General, was a direct subordinate of Attorney General Sessions immediately prior to his designation as Acting Attorney General. Plaintiff does not dispute that Mr. Whitaker had been appointed to his "subordinate" position by Attorney General Sessions and, thus, appointed in a manner consistent with the method prescribed in the Appointments Clause for inferior officers.

during transitions between presidential administrations there are often few, if any, Senate-confirmed officials available to serve. That is precisely one of the reasons why Congress chose to authorize the President to designate non-confirmed individuals as acting principal officers under the FVRA. 144 Cong. Rec. 27496 (Oct. 21, 1998) (statement of Sen. Thompson). But, to be sure, the problems with Plaintiff's proposed constitutional rule extend beyond the beginning of a new presidential administration. In contrast to the Department of Justice, which is staffed by multiple Senate-confirmed officials, many federal agencies are staffed with only one confirmed offical. If Plaintiff were correct in his interpretation of the Appointments Clause, then it is certainly possible that, when a vacancy in the top spot of an agency arises, such agency could remain without a head or be forced to rely upon reinforcements from confirmed appointees from other agencies. Indeed, the CFPB is such an agency, and yet, in the recent litigation concerning whether the President permissibly invoked his FVRA authority to designate as Acting CFPB Director OMB Director Mulvaney rather than Deputy CFPB Director English, neither any party nor any court suggested that Ms. English's service would be unconstitutional because she, unlike Mulvaney, was not Senate-confirmed.

Appointing an outside (and perhaps unfamiliar) Senate-confirmed officer could interfere with the efficiency of the agency's operations, thereby evoking Congress's concern "about designating too many Senate-confirmed persons from other offices to serve as acting officers in additional positions." 144 Cong. Rec. 27496 (Oct. 21, 1998) (statement of Sen. Thompson). It is also questionable why designation of an individual confirmed by the Senate to some *other* office, particularly in a *different* agency, would satisfy the purported requirement of Senate confirmation as acting agency head, at least absent some sort of "germaneness" requirement (*cf. Weiss v. United States*, 510 U.S. 163, 174-75 (1994)), that would again significantly narrow the pool of possible acting officers.

The inapplicability of these concerns to current Department of Justice circumstances is irrelevant. The availability of potential Senate-confirmed alternatives does not disable Congress from providing the President the discretion to pursue a different alternative as an acting agency head. Nothing in the text or history of the Appointments Clause suggests that the President may designate a non-confirmed individual as a temporary acting principal officer if, *but only if*, there is no Senate-

confirmed officer available.  Nor do the text or history of the Appointments Clause differentiate the office of Attorney General from other principal offices.  Thus, because Plaintiff's position must apply to *all* principal offices, its proposed constitutional rule would undermine the President's ability to ensure the faithful execution of the law, especially given the limited availability of recess appointments. *See Noel Canning*, 134 S. Ct. at 2566-67 (explaining that President may presumptively use recess-appointment power only during Senate recess of 10 days or longer).  In the face of a 200-year understanding between Congress and the President—one repeatedly confirmed by the Supreme Court—the Court should conclude that historical practice and precedent confirm the constitutionality of the President's designation.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's motion for preliminary injunction or substitution.

Dated: December 13, 2018                          Respectfully submitted,


                                                  JOSEPH H. HUNT
                                                  Assistant Attorney General
                                                  Civil Division

                                                  HASHIM M. MOOPPAN
                                                  BRETT A. SHUMATE
                                                  Deputy Assistant Attorneys General

                                                  JENNIFER D. RICKETTS
                                                  Branch Director

                                                  CHRISTOPHER R. HALL
                                                  Assistant Branch Director

                                                  */s/ Cesar A. Lopez-Morales*
                                                  CHETAN PATIL
                                                  CESAR A. LOPEZ-MORALES
                                                  REBECCA CUTRI-KOHART
                                                  Trial Attorneys
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  1100 L Street, N.W.

44

Washington, DC 20005
Tel: 202-305-8550
Email: cesar.a.lopez-morales@usdoj.gov

*Counsel for Defendant*